OPINION
{¶ 1} Appellant Ellen Greek ("mother") appeals the February 14, 2005 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and responsibilities in regard to her two minor children, and granted permanent custody of the children to appellee Stark County Department of Job and Family Services ("the department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 2, 2003, the department filed a complaint alleging Edwin Tucke (DOB 5/15/99) and Harley Tucke (DOB 2/12/02) were dependent, neglected and abused children, and seeking temporary custody of the children. The department became involved with the family through the First Unit in April, 2003. The original concern centered around domestic violence between the parents, the mental delays of both parents, the substance abuse by father, and the suicidal ideation of father. Edwin is autistic and completely nonverbal. Harley is nonverbal and could only drink out of a bottle.
 {¶ 3} As part of First Unit services, both parents received psychological evaluations. Additionally, a parenting aide was sent into the home to work with mother on her parenting skills. Further, workers from Healthy Tomorrows, and Children and Adolescent Services began in home visits with the family. The department requested Ricky Tucke, the children's father, to submit to urinalysis. Father submitted two samples on July 12, 2003, and August 13, 2003, both of which were positive for marijuana.
 {¶ 4} Father completed his psychological evaluation on July 7, 2003. Father's IQ is reported to be 66. The examiner found father not competent to parent independently and recommended he have no unsupervised contact with the children. There were also concerns regarding father's potential risk for sexual perpetration. The department instructed father to leave the home on July 2, 2003. Although father agreed to remain outside the home, he continued to live with the family.
 {¶ 5} Mother completed her psychological evaluation on August 6, 2003. The evaluation revealed mother to be minimally competent to parent with a need for ongoing support and assistance. The examiner expressed concerns regarding mother's poor coping mechanisms, and her potential for aggressive/hostile behavior, finding mother to be somewhat paranoid and depressed, the examiner recommended she obtain a psychiatric consultation for medication and be involved with individual psychotherapy for one year. Mother refused to follow those recommendations.
 {¶ 6} The children's maternal grandmother lives in the home with them. Both the ongoing case worker and the parenting aide observed the grandmother cursing at Edwin on more than one occasion. The parenting aide observed the grandmother grab Edwin by the neck.
 {¶ 7} On September 30, 2003, the department received a referral concerning bruises and red marks on Edwin. The ongoing case worker went to the home and examined Edwin, finding bruises on his buttocks and thighs as well as visible red marks on both sides of his face. When the parents were asked how the injuries occurred, they responded Edwin had slipped down the steps, fallen off his tricycle, and hit his face on a chair. The children were placed in the department's custody by the Louisville Police Department on October 1, 2003. The children were taken to Akron Children's Hospital Care Center for examination. The doctor ruled Edwin's bruises indicated physical abuse. The doctor found Harley had a serious case of diaper rash, which was most likely caused from the child's being left in soiled diapers for long periods of time.
 {¶ 8} The parents had been evicted from their residence due to their failure to pay rent for four months. The parents were required to leave the house by October 6, 2003.
 {¶ 9} As a result of the foregoing, the department filed a Complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging the children were dependent, neglected, and abused, and seeking temporary custody of the children. The trial court granted the department emergency shelter care custody on October 3, 2003. The trial court adjudicated the children to be dependent after the parents admitted to the same.
 {¶ 10} On August 12, 2004, the department filed a Motion to Extend Temporary Custody. Subsequently, on September 15, 2004, the department filed an Amended Motion from a Motion to Extend Temporary Custody to a Motion for Permanent Custody. The trial court conducted a hearing on the motion on January 18, 2005. The following evidence was adduced at the hearing.
 {¶ 11} Taranna Francisco, a social worker in the First Unit with the department, testified she became involved with the family on April 14, 2003. Francisco explained the department's initial concerns centered around domestic violence issues as well as the father's threats of suicide. The initial involvement with the family was voluntary. While First Unit services were in place, case workers observed bruises on Edwin. Additionally, supervision issues arose after Edwin left the house and neighbors had to return him. Francisco testified the parents cooperated with her and complied with the case plan. Francisco explained, due to mother's and father's limitations, no matter how hard they try, they are unable to parent.
 {¶ 12} Steve Dean, a clinical psychologist and Director of Melymbrosia and Voyager, conducted parenting evaluations of mother and father. As part of the process, Dean conducted a clinical interview with each parent, and performed IQ tests and personality tests as well as a parenting stress index. Dean testified his greatest concern regarding mother's ability to parent was her cognitive ability. Mother tested in the borderline range of intelligence, which indicates difficulty with problem solving and impulsivity. As a result of mother's cognitive limitations, she will have more difficulty than the average person in understanding the functional limitations of her children. Although she denied ever doing so, Dean had concerns regarding mother's physically disciplining the children. He explained, because of her impulsive nature, she would have more difficulty controlling her emotions and be more reactive, which could lead her to be physically abusive. Dean opined mother would need outside support on a consistent basis in order to parent effectively.
 {¶ 13} Judy Gaetje, a parenting instructor with Goodwill Industries, testified mother and father began parenting classes on February 16, 2004. Gaetje testified mother had perfect attendance and had not been tardy for class. Mother was enthusiastic and wanted to learn about parenting issues. However, mother was unable to utilize the skills she learned from week to week. Gaetje stated her biggest concern for mother was her ability to effectively parent without in-home support. Without consistent, ongoing support, mother would fall back into the same pattern as before. Gaetje concluded she was not sure mother could nurture the developmental disabilities and special needs of the children.
 {¶ 14} Amy Schuster, a counselor training therapist at Northeast Ohio Behavioral Health, testified she worked with mother and father on their relationship as well as other issues. Schuster noted, although mother had not made much progress with her counseling goals, she had been compliant in attending her weekly appointments. Schuster testified mother and father have a very episodic relationship with times of heightened turmoil followed by times of comfort. Mother and father have a difficult time applying the skills learned during therapy to their home life. Schuster added mother was unable to keep her finances in order, which effected her ability to be a responsible adult. Schuster expressed concerns with the emotional aspect of mother's relationship with father, noting their verbal arguments often became physical. Schuster stated mother had unrealistic views of the children's abilities.
 {¶ 15} Mother called Kim Labriola with Child and Adolescent Services as a witness on her behalf. Labriola testified she became involved with mother in October, 2002, when Edwin was a part of Eastgate Early Intervention. The school asked Labriola to provide mother with in-home parenting education and assistance with getting Edwin the appropriate educational classes. Labriola stated mother was currently involved with ongoing parenting services through Child and Adolescent Services. Labriola noted mother continues to work on her goals to meet the children's needs. Labriola acknowledged if the children were placed back with mother a continuation of services would be necessary. On cross-examination, Labriola testified she could not give a recommendation as to what mother is or is not capable. Labriola again stated she believed mother would need ongoing services.
 {¶ 16} Taranna Francisco returned to the stand for purposes of the best interest portion of the hearing. Francisco testified Harley had been diagnosed as developmentally delayed and is approximately one year behind in her development. Edwin had been diagnosed with attention deficit with hyperactivity disorder, autism, and developmental aproxia of speech. Developmental aproxia of speech is a developmental delay in the brain, in which the part of the brain which controls speech does not fully develop. Edwin is in special needs kindergarten through Canton City Schools. Harley is at Eastgate in an early intervention program. Edwin and Harley interact well with the foster family, and the family is interested in adopting the children. A second family, which has provided respite care is also interested in adopting the children. Father's sister requested custody of the children, however, she was not approved after the home study revealed potential drug abuse issues. Francisco opined the children are bonded with their parents, but are also equally bonded to the foster parents and respite family.
 {¶ 17} Via Judgment Entry filed February 14, 2005, the trial court ordered mother's parental rights, privileges and responsibilities be terminated, and further ordered permanent custody of the children be granted to the department. The trial court filed Findings of Fact and Conclusions of Law in support of its decision on the same day.
 {¶ 18} It is from this judgment entry mother appeals, raising the following assignments of error:
 {¶ 19} "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY TO SCDJFS BECAUSE THE CHILDREN HAD NOT BEEN IN ITS CUSTODY FOR 12 TO 22 MONTHS.
 {¶ 20} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 21} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO SCDJFS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I {¶ 23} In her first assignment of error, mother contends the trial court erred in granting permanent custody to the department because the children had not been in the department's custody for 12 of 22 months. Mother explains, the period between the department's being granted temporary custody of the children and its filing of the motion for permanent custody totaled only 11 months, and the time which passed between the filing of a motion for permanent custody and the permanent custody hearing did not count toward the 12 month period set forth in R.C. 2151.414(B)(1)(d).
 {¶ 24} R.C. 2151.414(B)(1) addresses the circumstances under which a trial court may grant permanent custody. The statute provides:
 {¶ 25} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 26} "(b) The child is abandoned.
 {¶ 27} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 28} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." (Emphasis added).
 {¶ 29} In re C.W., 104 Ohio St.3d 163, 2004-Ohio-6411, the Ohio Supreme Court held: "[B]efore a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period. In other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d).
 {¶ 30} "Finally, we note that our holding does not preclude an agency from moving for permanent custody before a child has been in the agency's temporary custody for at least 12 months. If a ground other than R.C.2151.414(B)(1)(d) exists to support a grant of permanent custody, the agency may move for permanent custody on that other ground."
 {¶ 31} The department agrees the children had not been in its temporary custody for the requisite period of time necessary to grant permanent custody based upon that specific ground. However, the trial court did not base its grant of permanent custody on the that ground. The trial court specifically granted permanent custody based upon its findings the children could not or should not be placed with mother within a reasonable pursuant to R.C. 2151.414(B)(1)(a).
 {¶ 32} Mother's first assignment of error is overruled.
 II, III {¶ 33} In her second and third assignments of error, mother challenges the trial court's findings the minor children could not or should not be placed with her within a reasonable time, and it was in the children's best interest to grant permanent custody to the department as being against the manifest weight of the evidence.
 {¶ 34} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 35} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 36} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 37} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 38} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 39} Assuming the trial court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 40} The trial court determined Edwin and Harley could not or should not be placed with mother at this time or within a reasonable period of time. The trial court found the department established by clear and convincing evidence following the removal of the minor children from mother's home, the initial concerns which necessitated the removal of the children had not been remedied. The trial court found, despite mother's efforts, mother is unable to independently care for the children due to her lack of mental ability. As set forth supra, every witness testified mother would need intensive and ongoing support in order to parent the children. With respect to the best interests portion, the evidence adduced at the hearing established the children are bonded to their foster family and the respite care family as equally as they are bonded with mother. Both the foster parents and the respite care providers are interested in adopting the children.
 {¶ 41} Accordingly, we find the trial court's determinations the children could not and should not be returned to mother, and the grant of permanent custody is in the best interests of the children are not against the manifest weight of the evidence.
 {¶ 42} Mother's second and third assignments of error are overruled.
 {¶ 43} The judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.
Hoffman, J. Boggins, J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.